708 So.2d 1292 (1998)
Johnny Roy PICARD, Plaintiff-Appellee,
v.
Ramona Jayne Korkanes PICARD, Defendant-Appellant.
No. 97-1528.
Court of Appeal of Louisiana, Third Circuit.
April 1, 1998.
*1293 Bernard Francis Duhon, Abbeville, John Robert Shea, Lafayette, for Johnny Roy Picard.
Michael A. Tomino, Jr., Lafayette, Michael Eugene Kramer, Winnsboro, Joseph Ricky LaFleur, Lafayette, for Ramona Jayne Korkanes Picard.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
DOUCET, Chief Judge.
Ramona Picard appeals a trial court judgment granting her ex-husband, Johnny Picard, an offset against amounts due her under a community property partition agreement.
The parties were married in 1962 and divorced in 1988. The two executed a community property partition agreement on December 12, 1988. On February 28, 1996, Ramona Picard filed a "Petition for Specific Performance and/or Breach of Community Property Partition," wherein she alleged that Johnny had breached the partition agreement by failing to disburse to her his part of his benefits from the Louisiana Teachers' Retirement System, including a sum received as a result of his participation in a Deferred Retirement Option Plan. Johnny filed a "Reconventional Demand to Revoke and in the Alternative Modify Community Property Settlement," alleging that the partition agreement was lesionary. He later amended his petition to assert lesion as an affirmative defense to the claim for breach of the agreement. Ramona filed an exception of prescription asserting that the reconventional demand should be dismissed because the claim for lesion had prescribed. Prior to trial, the parties submitted to the court on briefs, the question of whether Johnny could raise a prescribed action for recision based on lesion as an affirmative defense to the suit for specific performance, where he waived his right to assert lesion in the partition document itself.
The trial judge, in written reasons, found that the right to assert lesion could not be waived and that Johnny had the right, under La.Code Civ.P. art. 424, to raise the prescribed action for lesion as a defense to Ramona's action for specific performance and/or breach of contract.
The matter was then tried on the merits. After hearing the evidence, the trial judge rendered judgment granting Picard an offset in the amount $54,661.51 and, in consideration of the offset, granting him ownership of the DROP account. The judgment further ordered that Ramona receive 37.9% of any retirement funds or benefits payable to Johnny and that the Teachers' Retirement System of Louisiana send that portion of the benefits directly to her beginning June 1, 1998. Ramona appeals.

WAIVER OF LESION
The appellant first asserts that the trial judge erred in refusing to enforce the agreement to waive lesion contained in the partition agreement. She argues that the trial judge was incorrect in finding that the right to bring an action for lesion under La.Civ. *1294 Code art. 814 may not be waived. Unlike La.Civ.Code art. 2589, which provides that lesion may not be waived, La.Civ.Code art. 814 contains no such prohibition against waiver.
La.Civ.Code art. 814 states that: "An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received."
The court in Harmon v. Harmon, 508 So.2d 616, 620-21 (La.App. 2 Cir.), writ denied, 513 So.2d 1210 (La.1987) dealt with a waiver under former article 1398.[1] The court stated that:
We hold that the right to attack a community property settlement on grounds of lesion is one of the rights established by law which a party may not waive. Title 4 of the Civil Code is entitled "Conventional Obligations or Contracts." The fourth chapter of that Title concerns vices of consent. This chapter is divided into four sections, each section dealing with a different type of vice. The four types of vice are: error, fraud, duress and lesion. As a vice of consent, lesion cannot be waived because lesion destroys consent and without consent there is no contract.
As to defendant's argument that LSA-C.C. Art. 11 allows the parties to choose their own law, the Louisiana Supreme Court in E.L. Burns Company, Inc. v. Cashio, 302 So.2d 297 (La.1974) stated:
Article 11 of the Civil Code does state that individuals may renounce whatever advantages the law may have established in their favor; however, this is an exception to the general rule contained therein that, where a law is directed to the preservation of public order or good morals, the rule thus established may not be derogated from by private agreement. Reading further, Article 12 more specifically states an example of rules founded on public order in its terse decree that "whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed." LSA-C.C. Art. 12 (1970).
Statutory rules may be either imperative or suppletive. Rooted in public policy considerations, an imperative rule is applied without regard to the intention of the individuals concerned. A prohibitory law, as mentioned in Article 12, is one that is cast in the imperative form, but exhibits a negative, rather than positive, command. Examples of imperative rules include Article 2589 (rescission of sales of immovables for lesion beyond moiety)....
While LSA-C.C. Art. 2589 (lesion beyond moiety) is more specific than LSA-C.C. Art. 1398 (lesion beyond one fourth) in that it specifically states that the seller has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, we perceive no distinction between the two articles as to the purpose or theory behind them. Both articles enforce the same public policy, that is, to ensure that equality is achieved (LSA-C.C. Art. 1398), that each party receives a full equivalent for what he gives in a commutative contract (former LSA-C.C. Art. 1860 (1870)) and that the performance of the obligation by each party is correlative or equal to the performance of the other (LSA-C.C. Art.1965 and 1911). These principles basically relate to fair and equal treatment of each contracting party. Thus, lesion has particular importance in community property settlement contracts which are not truly "transactions or compromises," because a community property settlement begins with the assumption that each party owns an equivalent share of the community. Furthermore, the assets of the community and their value should be known by the spouses, or discoverable by them. Thus, when lesion does exist in a community property settlement, it must be *1295 the result of an error or other vice of consent. One party should not be allowed to take advantage of the extreme range of emotions which may affect the other party's judgment following a separation or divorce. The right to attack the contract due to lesion provides the necessary protection.
We agree with the reasoning used in this case and adopt it as our own. Therefore, we find no error in the trial court's determination that Johnny could not waive lesion in this case.
Further, while Johnny could not raise lesion as an independent cause of action, La. Code Civ.P. art. 424 states that:
A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff. A prescribed cause of action arising under The Federal Consumer Credit Protection Act may not be used as a defense even if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.
However, in connection with the enforcement of a negotiable instrument the defense of redhibition may not be used if it has otherwise prescribed.
This article is a reenactment of Article 20 of the 1870 Code of Practice. Comment (b) to Article 424 states with regard to that article that:
Art. 20 of the 1870 Code of Practice has long been recognized as the positive law basis in Louisiana for the Roman law maxim: Quae temporalia sunt ad agendum perpetua sunt ad excipiendum (Things which are temporary for the purposes of attack are permanent for the purposes of defense). Under this maxim, the courts have repeatedly held that a cause of action which would be prescribed if the obligee attempted to sue the obligor, can nevertheless be used as a defense to an action.
It is undisputed that Johnny's claim for lesion has prescribed, more than five years having passed from the time the agreement was executed until the date on which the reconventional demand was filed. Bernardi v. Chesson, 451 So.2d 145 (La.App. 1 Cir.1984). While we were unable to find a case in which a prescribed cause of action for lesion was allowed to be asserted as a defense, the courts have allowed a variety of prescribed causes of action to be asserted as defenses pursuant to this article.[2] Therefore, we find that the trial court correctly allowed Johnny's prescribed claim for lesion to be raised as a defense to Ramona's claim.

LESION
Ramona next contends that the trial judge erred in concluding that the settlement was lesionary. She argues that he erred in including $50,000.00 received from Johnny's mother in his calculation of the value of the community for purposes of lesion. Ramona argues that the money was a gift rather than a loan, as the trial judge concluded.
La.Civ.Code art. 1846 provides the means by which a party may prove the existence of an obligation for an amount in excess of five hundred dollars:
When a writing is not required by law, a contract not reduced to writing, for a price *1296 or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
In interpreting this article in connection with community property settlements, the courts have stated that:
The "credible witness" called for in LSA-C.C. art. 2277, may be the one seeking to have the debt recognized. See Feazel v. Feazel, 471 So.2d 851 (La.App. 2nd Cir.1985). The "corroborating circumstances" need not establish every element of the obligation. Feazel v. Feazel, supra. The trial court's assessment of credibility and corroboration are entitled to great weight. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Floor-N-Wall Distributors, Inc. v. Hirts, 428 So.2d 1103 (La.App. 1st Cir.1983).
Cenac v. Cenac, 492 So.2d 39, pp. 43-44 (La.App. 1 Cir.1986). See also Huckabay v. Huckabay, 514 So.2d 732 (La.App. 2 Cir. 1987).
In this case both Johnny and Ramona testified that they received the sum of approximately $50,000.00 from Johnny's mother, Wilda Bernard. Mrs. Bernard did not apparently give the couple the sum in cash. Rather, Johnny was allowed to use his mother's certificates of deposit as collateral for bank loans totalling approximately $50,000.00. Ramona testified that the money was used for race horses, horse trailers, house payments and living expenses. She further testified that Wilda Bernard had given the couple small sums of money as gifts throughout their marriage. Ramona stated that she felt the money was a gift. Johnny testified that the money was a loan. The trial judge found that the money was a loan. Given the evidence, we cannot say that the trial judge abused his discretion by so finding. As a result, the trial judge did not err in including this amount in his calculation of the value of the community for purposes of lesion.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the appellant.
AFFIRMED.
NOTES
[1] La.Civ.Code art. 814 reproduces the substance of Article 1398. It does not change the law.
[2] See, e.g., Gulf States Land and Dev., Inc. v. Ouachita National Bank in Monroe, 29,134 (La. App. 2 Cir. 4/4/97); 705 So.2d 189, writs denied, 97-1160, 97-1199 (La.10/19/97); 701 So.2d 168 (prescribed cause of action for extortion allowed as defense in suit on promissory notes); Burt v. Burt, 28,840 (La.App. 2 Cir. 10/30/96); 682 So.2d 866 (prescribed claim that stock was not registered and that its sale was therefore unlawfully allowed as an affirmative defense); Sessions & Fishman v. Liquid Air Corp., 94-0003 (La.App. 4 Cir. 8/17/94); 642 So.2d 249 (prescribed malpractice claim against law firm could be used as defense to firm's claim for balance due for legal fees and expenses); Dixie Bldg. Materials Co., Inc. v. Bob L. Whittington & Associates, Inc., 588 So.2d 78 (La.1991) (prescribed reconventional demand for alleged defects in concrete could be asserted as defense to concrete seller's claim for payment).