STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-523

TAMMIE BRITT

VERSUS

CARL BRITT

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 255,537
HONORABLE PATRICIA E. KOCH, DISTRICT JUDGE

**********

**VAN H. KYZAR**
**JUDGE**

**********

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Robert K. Doggett**
**Galloway Jefcoat, LLP**
**PO Box 61550**
**Lafayette, LA 70596**
**(337) 984-8020**
**COUNSEL FOR APPELLANT:**
**Carl Britt**

**Howell D. Jones, IV**
**Adam G. Huddleston**
**Carolyn O. Hines**
**Jones Law Partners**
**PO Box 14558**
**Alexandria, LA 71315**
**(318) 442-1515**
**COUNSEL FOR APPELLEE:**
**Tammie Britt**

**KYZAR, Judge.**

Appellant, Carl Britt, appeals a judgment of the trial court denying and dismissing his claim to rescind a previous settlement of the community property regime executed by him and his former wife, Tammie Britt, and for a partition of the community property from the former marriage. For the reasons set forth hereinafter, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Tammie Britt and Carl Britt were married July 30, 1993, in St. Bernard Parish, where they last resided together as husband and wife at 208 Sunny Hill Road in Pineville, Rapides Parish, Louisiana. Tammie filed for divorce on April 12, 2016, pursuant to La.Civ.Code art. 102. She also made incidental demands for child custody, child support, use of the family home, and for a partition of the community property existing between the parties.[1]

On October 14, 2016, the parties executed a Receipt and Release wherein they declared, in part, the following:

> [F]or and in consideration of FOUR THOUSAND, ($4,000.00) AND NO CENTS, paid to CARL A. BRITT, in satisfaction of all claims and demands regarding the community home located at 208 Sunny Hill Drive, Pineville, Louisiana, further described in 'Exhibit 1', of every kind, which he may have against Tammie Britt, the receipt of which is hereby acknowledged, [Carl Britt] does by these presents accept the payment of Four Thousand, ($4000.00) and no cents, satisfaction, compromise, release, discharge of all claims and demands, of every kind and character regarding the community home which he may have against the said Tammie Britt, in regards to the divorce petition filed on April 12, 2016, bearing docket number 255,537, division E, captioned 'Tammie Britt versus Carl Britt', and has hereby acknowledged said payment to be a full and complete release of Tammie Britt from any and all liability, of any kind and character whatsoever regarding the community home located at 208 Sunny Hill Drive, Pineville, Louisiana.

---

[1] The parties had legal guardianship of two minor children, who have since turned 18 years of age and thus custody and child support are no longer at issue. During the proceeding, it was agreed that Tammie would retain use of the family home.

In the document, the parties further agreed that Carl Britt would retain the 1990 GMC pickup truck and would further be responsible for the payment of both the loan at Moore Finance, in the amount of $2,000.00, and the Sears credit card, in the amount of $2,500.00. Tammie Britt assumed responsibility for the payment of the couple's Discover credit card in the amount of $3,000.00. The Receipt and Release was filed in the suit record October 16, 2016. Thereafter, a judgment of divorce was signed August 28, 2017.

On November 2, 2020, Carl filed a "Petition for Partition of Community Property and to Rescind Settlement of Community Property Agreement". Therein he asserts that the October 14, 2016 agreement as to the settlement of the community property should be rescinded in that he, "received less than three-eighths of the total community property . . . on October 14, 2016 . . . and therefore it should be found lesionary." Carl's petition pleads that the Property Settlement Agreement awarded Tammie the marital home, which appraised for $53,000.00 in 1996, and $3,000.00 in community debt, while he received $4,000.00, a 1990 GMC pickup truck, and $4,500.00 in community debt. Carl thereafter asserts that he is entitled to a rescission of the community property agreement effected between the parties and asserts his legal right to one-half of all the community property belonging to the community of acquets and gains formerly existing between the parties as of October 14, 2016. He further prayed for legal interest on the amounts he claims are due to him in excess of the amount received via the settlement agreement and attorney fees for his bringing the action.

Tammie answered the petition, denying the allegations with the exception that the parties in fact entered into a settlement of the community, and further filed an exception of prescription arguing that the one year prescriptive period for

2

lesionary sales applied rather than the five year prescriptive period for actions to rescind extrajudicial community property partitions. The exception was overruled by judgment signed January 20, 2021.

Trial on the merits was held a year later on January 20, 2022, at the conclusion of which judgment was rendered in favor of Tammie, dismissing Carl's petition. In its reasons for judgment, the trial court stated in part its reasoning and noted Carl's failure to meet the necessary burden of proof to set aside the settlement agreement for lesion.

> So I'm going to clarify my reasons better. What bothers me was that there was the lack of knowledge of both people, yet their lack of knowledge today, so I'm talking about 2016. Whenever they resolved this, this Receipt and Release, weak at best but it doesn't mean they weren't having a true compromise of their community property. I can't help that Mr. Gremillion is deceased and that y'all have tried to search, I think both, not only Robert Doggett but Kenneth Doggett and Mr. Jones, on other days they talked about trying to get those records but that's not a reason for me to grant - to open back up the lesion. So, no, I don't think you've proved it so I'm correct on what Mr. Jones is saying. Y'all have not given me enough to question. In fact, you've just kind of added to it, going, oh, yeah, Mr. Gremillion said something about the child support. So, no, there is not lesion and so we're not opening back up. Hate that, I mean, that Mr. Gremillion didn't provide more information on that.

Formal judgment was signed January 26, 2022. A motion for a new trial was filed and heard April 25, 2022, and denied. This appeal followed, wherein Carl raises two assignments of error, as follows:

> 1. The trial court erred in allowing parol[e] evidence in the form of testimony regarding child support and mortgage payments to vary the terms of the Release.
>
> 2. The trial court erred in failing to set aside the Release on the basis of lesion.

## DISCUSSION

Carl asserts that the trial court erred in allowing parole evidence through testimony regarding child support and mortgage payments to vary the terms of the

3

Receipt and Release agreement and that the trial court erred in failing to set aside the Release on the basis of lesion. We consider both assignments of error together.

While the agreement between the parties styled as a Receipt and Release is not labeled as a community property partition agreement, we note in his own petition, Carl refers to the agreement as such: "On October 14, 2016, petitioner and defendant, entered into a Settlement of Community Property Agreement, purportedly settling and liquidating the community of acquets and gains formerly existing between them[.]" He does not assert that it was a partial settlement, or that it did not settle all claims of the community regime, only that the agreement should be set aside for lesion, as he did not receive at least one fourth the net value of the community assets. La.Civ.Code art. 814. In any event, the document executed by these parties is an agreement relative to a settlement of all or part of the former community property regime.

> Legal agreements such as the judgment of separation have the effect of law upon the parties, who are held to full performance of the obligations undertaken. Courts are bound to give legal effect to all such contracts according to the common intent of the parties. LSA-C.C. Art. 2045; *Doyal v. Pickett*, 628 So.2d 184 (La.App. 2d Cir.1993); *Lindsey v. Poole*, 579 So.2d 1145 (La.App. 2d Cir.1991), *writ denied*, 588 So.2d 100 (La.1991). This intent is to be discerned from the words in the contract when they are clear and explicit and do not lead to absurd consequences. LSA-C.C. Art. 2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. Art. 2047.

> The parties' intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. *Lindsey, supra.* Intent, which is an issue of fact, is to be inferred from all of the surrounding circumstances. *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 92-1544, 92-1545 (La.App. 1st Cir. 03/11/94), 634 So.2d 466; *Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924 (La.App. 1st Cir.1989), *writ denied*, 545 So.2d 1041 (La.1989). Where the mutual intention of the parties has not been fairly explicit, the court may consider all pertinent facts and circumstances, including the parties' own conclusions, rather than

4

adhere to a forced meaning of the terms used. *Spohrer v. Spohrer*, 610 So.2d 849 (La.App. 1st Cir.1992).

*Futch v. Futch*, 26,149, pp. 8-9 (La.App. 2 Cir. 9/23/94), 643 So.2d 364, 370.

We find the rationale of the Second Circuit in *Futch* to be equally applicable here. The Receipt and Release is a legal contract or agreement between these parties, who are bound to abide by the same, and which must be given effect according to their intent. The trial court determined the intent of the parties, as to whether they were fully or partially settling issues of community property by the October 14, 2016 agreement, was unclear. We agree. As such, parole evidence was admissible to determine that intent. *Id.*

In *Taylor v. Taylor*, 33,959 (La.App. 2 Cir. 11/1/00), 772 So.2d 891, the Second Circuit considered an appeal by the husband in his lawsuit claiming that a previous extrajudicial settlement of community property should be set aside for lesion. The trial court dismissed his petition following trial on the merits. In reversing the lower court's decision on the facts presented therein, the court set forth the law and burden of proof applicable to such claims.

> An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received. La.C.C. art. 814. Lesion cannot be waived. *Harmon v. Harmon*, 508 So.2d 616, 620-21 (La.App. 2d Cir.), *writ denied*, 513 So.2d 1210 (La.1987); *Picard v. Picard*, 97-1258 (La.App. 3d Cir. 4/1/98), 708 So.2d 1292, 1295.
>
> The proper method of establishing lesion beyond one-fourth is twofold: (1) the community property's true value (net value) must be ascertained; and (2) it must then be determined from the property acquired whether a party received value less than ¾ of ½ share of the true value of the property partitioned. *McCarroll v. McCarroll*, 96-2700 (La.10/21/97), 701 So.2d 1280, 1285; *Cowling v. Cowling*, 486 So.2d 1060 (La.App. 2d Cir.1986); La. C.C. art. 2590; La. C.C. art. 814 comment (b). The party claiming this remedy has the burden of proving lesion beyond one-fourth and must establish the claim by clear and convincing evidence. *King v. King*, 493 So.2d 679, 681

5

(La.App. 2d Cir.1986); *Ozane v. Ozane*, 392 So.2d 774, 777 (La.App. 3d Cir.1980).

*Id.* at 894.

In the instant case, Carl had the burden of proving the true value of the community property at issue at the time of the settlement agreement, and that he received less than one fourth the net value thereof. As noted in *Taylor*, the burden of proof is by clear and convincing evidence, not a mere preponderance. *Id.*

The trial court found as a matter of fact that Carl failed to meet his burden of proof and dismissed the claim. On appeal, it is well settled that the standard for review demands that great deference be given to the trier of fact's findings and that those factual determinations not be disturbed in the absence of manifest error or a determination by the appellate court that they are clearly wrong. *Rosell v. Esco*, 549 So.2d 840 (La.1989). We find no manifest error in the decision of the trial court here.

Testimony and evidence presented in court at the trial of the matter concerning the parties' community property and the events surrounding the settlement are disjointed. From the record, it is clear that the events leading to the execution of the Receipt and Release and the initial litigation occurred when Tammie was represented by her former attorney, Mr. Field Gremillion, who subsequently died. Records left in his possession pertaining to the case were apparently not able to be recovered.

Carl testified that he and Tammie financed $53,000.00 to purchase the family home in 1996 and that the payoff was $91,000.00. He did not present any direct evidence as to the value of the community home at the time of the settlement agreement in 2016. It was not explained why the loan payoff was greater than the

6

amount financed in 1996. During his testimony, Carl was questioned about sales of other houses in the vicinity of the community home; however, no expert witness in real estate appraisals or related areas was called and there was no connection made of these other sales as to time, place, and specific characteristics of the other homes. Further, Carl offered no testimony or appraisal evidence as to the value of the GMC truck he received via the settlement agreement.

Tammie also testified but offered no testimony as to any known valuation of the former community home, nor any of the other assets of the community, nor the actual debts of the community. Tammie did testify that the home had a mortgage at the time of the settlement agreement and that she paid it off some time in the year after the settlement. She, however, did not state the amount paid to satisfy the loan. Tammie testified the home was in need of significant repair. She stated that neither the central heating nor air conditioning worked, the roof was in need of repair, and there were plumbing issues. An appraisal report showing the value of the house at $53,000.00 was introduced. However, this appraisal report was from 1996 and did not represent the 2016 value of the home. Ultimately, during the trial, the Clerk of Court obtained records from mortgage records of her office showing that Tammie paid off the mortgage on the family home on February 21, 2017, in the amount of $46,800.00. The evidence of the Clerk of Court as to the payoff and the records thereof was received without objection at the time it was given in court. In order to avail oneself to argue on appeal the inadmissibility of evidence at trial, a party must have made a timely objection to the evidence that party considers to be inadmissible and must state the specific ground for the objection. La.Code Evid. art. 103(A)(1); La.Code Civ.P. art. 1635.

7

Given this record, we find that the trial court was not manifestly erroneous in the determination that Carl failed to carry his burden of proof by clear and convincing evidence that the settlement agreement was subject to nullity for lesion. In suing to rescind the agreement for lesion, Carl had a two-fold burden of proof that required he show the net value of the community assets. This value was not established, and, thus, he could not meet the second prong of his burden, showing that he received less than one-fourth of the established value of the community assets. As such, we find no error in the judgment of the trial court dismissing Carl's demands, with prejudice.

## DECREE

The judgment of the trial court in favor of Tammie Britt, dismissing the demands of Carl Britt, is affirmed. All costs of this appeal are assessed to Appellant, Carl Britt.

**AFFIRMED.**